

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 2 0 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TRIPLE TEE GOLF, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:04-CV-302-A |
| | § | |
| NIKE, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION
### and
### ORDER

Before the court for consideration is the motion of

plaintiff, Triple Tee Golf, Inc., for leave to supplement the

report of its expert Douglas Winfield ("Winfield").[1]  Defendants,

Nike, Inc., Tom Stites & Associates, Inc., d/b/a Impact Golf

Technologies, Inc., and John Thomas Stites, III, a/k/a Tom

Stites, oppose the motion.  The court has concluded that the

motion should be denied for the reasons stated below.

---

[1]For a description of the nature of the litigation and previous
developments in it, the court refers to, and adopts by reference,
memorandum opinions and orders the court rendered in connection with
plaintiff's motion for summary judgment that were signed July 13,
2005, July 5, 2007, and July 12, 2007.  Also, the court refers to the
opinion of the Fifth Circuit announcing its ruling that this court's
grant of summary judgment on July 13, 2005, was being reversed, and
that the case was being remanded for further proceedings, reported at
Triple Tee Golf, Inc. v. Nike, Inc., 485 F.3d 253 (5th Cir. 2007).

I.

## The Grounds of the Motion

Plaintiff acknowledges that the deadline for filing its expert reports expired in March 2005 pursuant to the court's July 16, 2004, scheduling order. However, plaintiff apparently maintains in its motion that (a) Rule 26(a)(3) of the Federal Rules of Civil Procedure operates to override the deadline fixed in the July 16, 2004, order for the filing of expert reports and (b) a new deadline was fixed by an order the court signed May 16, 2007, which plaintiff refers to as the "Trial Order." According to plaintiff, the supplemental report of Winfield has been timely submitted.

Plaintiff says that Winfield's identity as a technical expert on golf club designs initially was disclosed on April 6, 2005, and that plaintiff submitted Winfield's expert report within the deadline fixed by the July 16, 2004, scheduling order.[2] Thereafter, On July 13, 2005, the court granted defendants' motion for summary judgment, and dismissed the action

---

[2]The court assumes that Winfield's original report was, in fact, prepared and disclosed in April 2005. In this memorandum opinion and order it is referred to as the "April 2005 report." The report is in the record under tab 3 in the document filed June 19, 2007, titled "Defendants' (Corrected) Appendix of Evidence in Support of Their Opposition to Plaintiff's Motion for Leave to Supplement the Expert Report of Douglas Winfield."

2

in its entirety. Following entry of the judgment of dismissal,
and after plaintiff had given notice of appeal to the United
States Court of Appeals for the Fifth Circuit, plaintiff,
according to the allegations in the motion, "identified two
patent applications that were filed by Defendants involving an
adjustable weighting system by the end user in golf club heads"
which, according to plaintiff, "were intentionally withheld from
discovery by Defendants." Mot. for Leave at 2. Plaintiff
alleges that upon learning of the applications plaintiff filed in
this court a motion for relief from the judgment of dismissal,[3]
to which it attached a September 2005 declaration of Winfield
that indicated that the two patent applications, US Patent
Publication Nos. 2005/0009625 (the "625 Application") and
2005/0137024 (the "024 Application"), are evidence of defendants'
misappropriation of plaintiff's trade secrets. Id. at 1-2.

On November 28, 2005, the court denied the motion for relief
from judgment. Plaintiff appealed to the Fifth Circuit from the
November 28 denial order. Plaintiff points out in the motion to
supplement that in May 2007 the Fifth Circuit, in the course of
reversing the July 2005 judgment of dismissal, "specifically

---

[3]The motion for relief was filed in October 2005.

[found] that the withheld patent applications at issue were
relevant, and had they been disclosed during the course of
discovery, a summary judgment would not have been appropriate on
any of [plaintiff's] claims."  Id. at 3.

The requested supplementation of Winfield's report consists
of the September 19, 2005, declaration of Winfield that plaintiff
filed in October 2005 in support of its motion for relief from
the July 13, 2005, judgment, a copy of which is under tab 4 of
the appendix to the motion for leave, and an undated document
titled "Supplemental Expert Report of Douglas C. Winfield," a
copy of which is under tab 3 of the same appendix.[4]

II.

Defendants' Opposition to the Motion for Leave

The main focus of defendants' opposition is that the
requested supplementation should be denied because Winfield had
knowledge of the 625 Application when he prepared and published
his April 2005 report, with the consequence that there is no
justification in allowing him to supplement his report relative

---

[4]At the hearing held in the above-captioned action on July 18,
2007, counsel for plaintiff first informed the court that the
requested supplementation was limited to the undated document under
tab 3 of the appendix, but on further discussion counsel informed the
court that plaintiff really is asking for supplementation in the form
of the September 19, 2005, declaration as well as the undated
document.

4

to patent applications on the pretense that he did not have
sufficient knowledge when he made his earlier report to include
an opinion on the subject of any relevance either of the patent
applications might have had to his opinions. A related
contention of defendants is that one of the statements made by
this court in the November 28, 2005, order denying the motion for
relief and statements made by the Fifth Circuit in its opinion
related to disclosure of the patent applications were induced by
false information provided to this court by plaintiff in its
October 2005 motion for relief and to the Fifth Circuit in briefs
plaintiff filed in that court in the appeal from the order of
this court denying the motion for relief.

Next, defendants argue that the proposed supplemental report
is irrelevant to the issues, if any, that remain to be tried.
While recognizing that the Fifth Circuit said in its opinion that
the patent applications have relevance, defendants urge that that
statement was made on the assumption that the applications
represented golf clubs that one or more of the defendants were in
the process of developing. According to defendants, there is no
evidence that it is in the process of developing any club by use
of the design specified in either of the patent applications.
Defendants also maintain that a previous ruling of this court

5

denying plaintiff leave to amend its complaint to add patent-
related claims, which ruling was not the subject of a complaint
on plaintiff's appeal to the Fifth Circuit, constitutes the "law
of the case" on the subject of possible use by plaintiff of
patents in this litigation. Finally, defendants argue that, even
if the court were to conclude that the supplemental report has
relevance, it should be excluded under the authority of Rule 403
of the Federal Rules of Evidence, because whatever probative
value the patent applications might have is substantially
outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury.

III.

Analysis

A.    The Timeliness Issue.

Plaintiff's contention that a supplementation of Winfield's
expert report at this date would be timely by reason of language
contained in the court's May 16, 2007, order is incorrect. The
only order the court has rendered relative to the designation of
experts and the filing of expert reports is the following

6

provision that was contained in the scheduling order the court

signed July 16, 2004, that provided as follows:

> 15.   Each party shall designate experts by filing
> a written designation including the name, address, and
> telephone number of each expert who may be called to
> testify and make the disclosures required by Fed. R.
> Civ. P. 26(a)(2) by serving the required written
> reports at least 120 days before the pretrial
> conference date.

July 16, 2004, Order at 5.   The scheduling order fixed July 5,

2005, as the date for the pretrial conference, causing the

deadline for designation of experts and filing of expert reports

to be in early 2005.   That deadline has not been extended.[5]

The untimeliness of the filing of the motion for leave is

but one of the factors the court is considering in its ruling on

the motion.

B.   Whether, and to What Extent, Information Pertaining to
the 625 and 024 Applications Were Unknown to Plaintiff
Because of Improper Withholding of Information by
Defendants - Plaintiff's False Representations to This
Court and the Fifth Circuit.

Plaintiff puts emphasis in the motion for leave on (a) the

statement made by the court in the November 28, 2005, order

---

[5]The court interpreted comments made by counsel for plaintiff at
the July 18, 2007, hearing in this action to be an acknowledgment that
the motion for leave was inaccurate to the extent that it implied that
language in either the July 16, 2004, or the May 16, 2007, order
caused the filing of a supplemental report at this time to be timely.

7

denying plaintiff's motion for relief from final judgment that "[t]he court agrees with plaintiff that defendants should have disclosed in their discovery responses in the above-captioned action the existence of the two patent applications to which plaintiff refers in its motion and brief ([625 Application] and [024 Application])," Nov. 28, 2005, Order at 1, and (b) findings of a comparable nature made by the Fifth Circuit in its April 17, 2007, opinion of reversal and remand, Triple Tee Golf, Inc. v. Nike, Inc., 485 F.3d 253, 269 (5th Cir. 2007) (saying "[h]ad the patent applications been disclosed during discovery, the district court should not have--and likely would not have--granted Defendants' motion seeking to limit [plaintiff's] proofs to only the accused clubs on any of its claims"). The court now has learned that the facts are not as plaintiff represented them to be when it induced this court and the Fifth Circuit to make those statements. Had the truth been known at the time, contrary findings by each court would have been appropriate, and might well have been made.

The Motion for Relief from Final Judgment that led to the November 28, 2005, order contained the following representations to the court about the 625 Application and the 024 Application:

8

(1)   In the Introduction on page 1 of its brief in support of its motion for relief plaintiff represented that it only "recently discovered" the patent applications.

(2)   At page 7 plaintiff represented that it could not make the "patent applications available for review to its own expert, Douglas Winfield, due to the non-disclosures of Defendants" and that "[t]hus, Dr. Winfield could not have based his opinions about Defendants use of [plaintiff's] trade secrets upon the patent applications now at issue."

(3)   Other language on page 7 suggests that Dr. Winfield only recently had reviewed the two patent applications, and had, after the review, indicated that his opinions would have been substantially affected had he known of the applications before rendering the opinions.

(4)   As indicated by the heading on page 12, that entire section was devoted to developing the theme that the failure of defendants to disclose the patent applications was a fraud upon this court.

In plaintiff's reply to defendants' opposition to the motion for relief, plaintiff said that "[plaintiff] did not have any idea that the patent applications at issue even existed. Reply to Opp'n at 3 (emphasis added). In the same vein, at page 4 of

the reply plaintiff represented that "<u>it had no reason to believe</u> [that either of the patent applications] <u>even existed</u>," (emphasis supplied by plaintiff), asserting that they were "safely hidden from [plaintiff]" at the summary judgment stage and that it was "disingenuous for Defendants to argue that these applications were reasonably available to [plaintiff]."

Similar representations were made in the declaration of Winfield that plaintiff filed in support of its motion for relief.[6] In paragraph 9 on the third page of the declaration Winfield attributed his deposition answer that he "could not find a patent, patent application, . . . of the Defendants that evidenced any removable or adjustable weighting elements by the golfer, or evidence of development of such a system by the Defendants" on absence of knowledge by him of the patent applications in question. In paragraphs 11 and 12, on the fourth page of the declaration, Winfield suggests that he only recently had been provided with the 625 and 024 Applications to review and incorporate into his prior opinions, and that as a result of that

---

[6]The Winfield declaration, dated September 19, 2005, is under tab 19 in the appendix filed by plaintiff on October 11, 2005, in support of its motion for relief from judgment.

10

recent review there are substantial changes and revisions to his
prior opinions.

The declaration of Jack Gillig ("Gillig"), which also was
provided to the court in support of plaintiff's motion for relief
from final judgment, likewise was calculated to lead the court to
believe that plaintiff had no knowledge of either the 625
Application or the 024 Application until after the court granted
defendants' motion for summary judgment on July 13, 2005. The
contents of the declaration represented to the court that not
until after the judgment was rendered in July 2005 did Gillig
search through 2005 publications of the United States Patent &
Trademark Office and locate the 625 and 024 Applications. Mot.
for Relief from J., App. at 127, ¶¶ 9 & 10.

Comparable representations were made by plaintiff to the
Fifth Circuit in the briefs it filed in its appeal from the
November 28, 2005, order denying the motion for relief. See
Opp'n to Pl.'s Mot. for Leave, App. (Corrected) at 165-221. At
pages 2-3 of its main brief, plaintiff represented to the Fifth
Circuit that it filed the motion for relief once it discovered
the 625 and 024 Applications. See id. at 174-75. At page 8,
plaintiff made the unqualified representation to the Fifth
Circuit that due to defendants' failure to disclose the patent

11

applications in its discovery responses plaintiff "had no way of
discovering their existence until it was too late." Id. at 180.
At page 10, plaintiff represented to the Fifth Circuit that it
"discovered '625 and '024 Applications after the district court
had entered the summary judgment that is the subject of the
earlier appeal." Id. at 182. At page 11, plaintiff represented
that non-disclosure of the applications precluded Winfield from
including them in his opinions concerning defendants' use of
plaintiff's "trade secrets" and that, now that Winfield has
reviewed the applications, he has indicated that the testimony he
rendered would have been "substantially affected by these patent
applications." Id. at 183. At page 12, plaintiff explained why
the patent applications were not included in the summary judgment
record by saying that defendants "never disclosed these two
patent applications so they could be included in the recorded
evidence." Id. at 184. At page 13, the Fifth Circuit was told
that "[a]fter the district court made its summary judgment
findings . . . [plaintiff] discovered two patent applications
filed by [defendants] that were pending in the United States
Patent and Trademark Office during the litigation." Id. at 185
(emphasis added). Similar representations were made by plaintiff

12

to the Fifth Circuit in its reply brief.  See id. at 209, 215, & 216.

Had plaintiff been candid with this court and the Fifth Circuit, plaintiff would have told both courts (a) that one of the things that Winfield was asked by plaintiff to do in preparation for the formation and statement of his expert opinions was, in effect, to "give an opinion, as an expert, as to" whether the 625 Application "incorporat[ed] the technology and trade secrets disclosed in confidence by Gillig to Stites," April 2005 report at 1-2, § I.A, and (b) that Winfield did not find that the 625 Application incorporated any such technology or trade secrets.[7]

Those statements by Winfield in his April 2005 report, and the absence of any opinion in his report adverse to defendants

_____

[7]The report states that in the course of its preparation Winfield reviewed, among other things, "patents naming [Tom] Stites as a sole or co-inventor and their corresponding file histories," April 2005 report at 3, ¶ D; and, he referred to Exhibit M to the report for a listing of the things he reviewed, id.  Exhibit M contains an entry disclosing that one of the patent applications Winfield reviewed was the 625 Application, and showing (a) under the heading the "Inventors," that the inventors were "Stites; Tavares," (b) that the "Title" of the application was "Golf Club Having a Weight Positioning System," (c) that the "Patent No." was "2005009625 [sic]," (d) that the "Filing Date" was "10-Jul-03," and (e) that the "Date of Patent" was "Publ. January 13, 2005," id., Ex. M.  Nothing in the report suggests that Winfield found anything suspect about the patent application.

13

related to the 625 Application, expose as false representations
plaintiff made to this court and the Fifth Circuit in an effort
to gain favorable rulings after the July 13, 2005, rendition of
summary judgment for defendants. In the same vein, by an
interrogatory answer plaintiff made, through Gillig, on March 2,
2005, plaintiff admitted that one of the patents or published
patent applications Gillig had reviewed after commencement of
this litigation was the 625 Application, showing Tom Stites
("Stites") and Tavares as inventors and bearing the title "Golf
Club System Having a Weight Positioning System." Opp'n to Pl.'s
Mot. for Leave, App. (Corrected) at 12, 16.

     During the taking of testimony in open court in this action
on July 18, 2007, Gillig admitted that he obtained a copy of the
625 Application in February or March 2005 and furnished it to one
of his attorneys in this action, and that the conclusion was
reached that the 625 Application did not incorporate any of the
trade secrets Gillig claims to have disclosed to Stites in
September 2000. Needless to say, this court would have benefited
from that information when evaluating plaintiff's motion for
relief from final judgment in November 2005; and, it would have
been furnished to the court had plaintiff and its counsel been
honest with the court. Had this court known the truth relative

14

to the 625 Application and that plaintiff in its October 2005 brief in support of its motion for relief from final judgment had made misrepresentations to the court on that subject, this court might well have denied the motion for an entirely different reason, one that the Fifth Circuit might have found acceptable. While the court is not so presumptuous as to say what the Fifth Circuit would have done if it had known of the falsity of the representations plaintiff made to it in the briefs on appeal, there is a possibility that the ruling of the Fifth Circuit would have been different from what it was.

While not dispositive, the lack of candor of plaintiff is a factor that the court is considering in ruling on plaintiff's motion to supplement Winfield's expert report. The circumstances that plaintiff and Winfield had knowledge of, and had studied, the 625 Application before Winfield prepared and published his April 2005 report and had concluded that it did not have relevance to the issue of whether defendants appropriated the technology and "trade secrets" that plaintiff claims Gillig disclosed to Stites weighs in favor of defendants in the decision the court is making on the motion to supplement Winfield's report.

15

C.     The Relevance Issue.

In evaluating the merit of the contention of defendants that

neither of the patent applications is relevant to issues to be

tried in this case, the court must bear in mind, and be guided

by, the things the Fifth Circuit said in its opinion concerning

possible relevance of the patent applications.  The Fifth Circuit

said that they were "convinced that the district court

erroneously disregarded the relevance of the patent applications

to its evidentiary orders that laid the foundation for its grant

of summary judgment"[8] and that "[h]ad the patent applications

been disclosed during discovery, the district court should not

have--and likely would not have--granted Defendants' motion

seeking to limit [plaintiff's] proofs to only the accused clubs

on any of its claims."  Triple Tee, 485 F.3d at 269.

Apparently the Fifth Circuit had in mind that plaintiff

might be able to establish through the lead of the patent

applications that defendants used plaintiff's alleged trade

secrets in the development by Nike of golf clubs previously

_____

[8]The statement by the Fifth Circuit concerning this court's
"erroneous" disregard of the relevance of patent applications to its
evidentiary orders is puzzling, bearing in mind that this court had no
knowledge of the patent applications when it rendered the evidentiary
orders or when it granted the motion for summary judgment.

16

undisclosed in the litigation.  In footnote 34 on page 269 of the

opinion, the Fifth Circuit said:

> As noted above, the court's decision to limit
> [plaintiff's] trade secrets proofs to only the accused
> clubs was based on [plaintiff's] inability to connect
> its proprietary weighting system to any other Nike
> product. If [plaintiff] had had the patent applications
> at that point, it might have been able to establish
> connections to other Nike clubs under development.

(emphasis added).  And, in the course of explaining the effect of

the reversal of this court's denial of plaintiff's motion for

post-judgment relief, the Fifth Circuit said:

> [T]he practical effect of our additional reversal of
> its denial of post-judgment relief will be to allow
> [plaintiff] to expand its claims beyond the accused
> clubs to include any misuse of its trade secrets in any
> Nike club comprehended by the subject patent
> applications.

Id. at 269 (emphasis added).

Thus, the opinion assumes that plaintiff might be able to

establish a connection between the patent applications and Nike

clubs under development,  Defendants argue that the Fifth Circuit

opinion does not suggest that the patent applications themselves

will be admissible absent additional evidence that there are Nike

clubs in existence, or under development, consistent with the

clubs described in the applications; and, defendants go on to

note that plaintiff, through Winfield, does not offer any opinion

17

that there is in existence, or under development, a Nike club comprehended by either of the patent applications. Rather, defendants note, Winfield's proposed supplemental report simply talks in terms of generalities of a "next generation of clubs now in development," Opp'n to Pl.'s Mot. for Leave, App. (Corrected), at 260, without making reference to any specific club.[9]

In evaluating whether plaintiff has shown that the 625 Application has relevance to the case as it is now postured, the court has no hesitancy to conclude that no such showing has been made. Not only is there no suggestion in the record that there is an existing or proposed Nike club that is based on the application, the court now has the benefit of the new evidence from which it can, and does, infer that the evaluation by Winfield of the 625 Application in early 2005 led him to the opinion that it did not incorporate any of the technology or trade secrets plaintiff claims Gillig disclosed to Stites in September 2000. The court does not accept as worthy of belief

---

[9]The court has not overlooked the suggestion by Winfield in his September 19, 2005, declaration that the patent applications provide evidence that defendants are using trade secrets Gillig disclosed to Stites relative to the marketing of golf clubs of the kind Gillig had in mind. In that regard, the court concludes that there is no evidence that anything contained in either of the patent applications is a part of any marketing plan of any of the defendants. Winfield's "marketing" theory on its face lacks merit.

18

the recent contention of plaintiff that the contents of the 024
Application caused Winfield to realize, after all, that the 625
Application really did incorporate some of the allegedly
misappropriated technology and trade secrets. Even a non-expert
can tell from a review of the documents that such a contention
makes no sense.

The court is inclined to think that, for the reason given by
defendants, there is no basis in the record as it now exists for
a conclusion that the 024 Application has any relevance to this
case. There is no suggestion in the evidence that Nike has
developed, or is developing, any golf club based on the club
design shown in the 024 Application. However, the court is not
foreclosing the possibility that something could happen during
the trial that would cause evidence concerning the 024
Application to become admissible. This is a subject to which the
court will return at a later point in this memorandum opinion.

D.   The Defendants' "Law of the Case" Contention.

In April 2005 plaintiff filed a motion to amend its
complaint to add, among other things, a count titled "Declaration
of Inventorship" by which plaintiff sought adjudications that
certain patents issued to Stites and another or other persons
were based on confidences plaintiff says Gillig disclosed to

19

Stites, with the consequence that Gillig was the true inventor as to those patents. The proposed amended language alleged that Gillig assigned all of his ownership rights in his inventions to plaintiff, who now is the rightful owner of all the patents. Plaintiff sought a declaration that Stites and the other inventors shown on the patents be removed as inventors of the patents and that the inventorship of the patents be corrected to reflect that Gillig is the inventor. After a telephone conference/hearing on the motion for leave to amend, the court denied it as to the patent claims. Defendants urge that the denial of the motion for leave to amend was a ruling by the court that plaintiff will not be permitted to add patent issues to this case. Relying on the "law of the case" doctrine, defendants reason from that incorrect premise that the decision already has been made in this case that the two patent applications in issue cannot be injected into the case. Understandably, the defendants do not cite any legal authority that provides support for their "law of the case" argument. The court concludes that it is without the slightest merit.

E.   <u>Defendants' Argument that Winfield's Proposed</u>
      <u>Supplemental Report Should, in any Event, be Excluded</u>
      <u>Under Rule 403</u>.

The court has decided for the above-stated reasons that the proposed supplemental reports should not be allowed as to the 625 Application, but the court has not decided that there is no theory under which evidence pertaining to the 024 Application can properly be received in evidence. Until the court faces that issue at trial, in the context of the trial record existing at the time the issue is faced, the court cannot make an evaluation as to whether the probative value of the evidence would be outweighed by factors mentioned in Rule 403 of the Federal Rules of Civil Procedure. Therefore, a decision on that subject now would be premature.

F.   <u>Conclusion</u>.

The court has concluded that supplementation of Winfield's expert report with opinions relative to the 625 application would be inappropriate. Because references to, and reliance on, the 625 Application are so intertwined with the opinions expressed in the proposed supplemental reports, the court is denying the motion for leave in its entirety. However, that does not mean that at trial the court cannot be persuaded that evidence pertaining to the 024 application should be received in the light

21

of the then-existing trial record.  Until the court confronts the
issue at trial, and makes a ruling thereon, plaintiff shall not
be permitted to offer any evidence through Winfield or otherwise
concerning the 024 Application, and shall not make any statement
or argument in the hearing of the jury pertaining thereto.

     In the Fifth Circuit's opinion in this case, the Fifth
Circuit said, in a footnote, that an order of this court
pertaining to the scope of proof plaintiff would be permitted to
present at trial "must be revised, or withdrawn and reissued, to
allow for evidence related to the undisclosed Nike patent
applications at issue."  Triple Tee, 485 F.3d at 267 n.29.  This
memorandum opinion and order should be taken as the revision the
Fifth Circuit has directed the court to make.  To the extent the
previous order of this court would have prevented any trial
evidence related to the 024 Application, the order is revised to
be consistent with this memorandum opinion and order.

                              IV.

                             Order

     For the reasons given above,

     The court ORDERS that plaintiff's motion for leave to
supplement the expert report of Winfield be, and is hereby,
denied.

                               22

The court further ORDERS that plaintiff shall not, without first approaching the bench and obtaining permission of the court to do so, (a) make reference to the 024 Application in the hearing of the jury or (b) ask any question of a witness that would be calculated to cause the witness to give an answer relative to the 024 Application.

The court further ORDERS that this memorandum opinion and order revises any previous order of this court that would have prevented trial evidence related to the 024 Application to whatever extent necessary to cause the previous order to be consistent with this memorandum opinion and order on the subject of the 024 Application.

SIGNED July 2O, 2007.

JOHN McBRYDE
United States District Judge

23